# Filling the Vacancy Following the
# Death of the Secretary of War

The performance of the duties of the Secretary of War by an acting secretary may not extend beyond thirty days from the date of the death of the late Secretary of War, and it will be necessary for a new Secretary of War to be appointed in accordance with the provisions of the Appointments Clause of the Constitution to perform those duties after that date.

There is some doubt whether the duties specifically imposed by Congress upon the Secretary of War may be performed by the President, as Commander in Chief of the Army, or by any other person not serving as the Secretary of War.

September 21, 1936

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

Reference is made to the request of Mr. Marvin H. Mclntyre, Assistant Secretary to the President, for your opinion concerning the necessity of the appointment of a successor to the late Secretary of War.[*]

The Act of August 7, 1789, ch. 7, § 1, creating the Department of War, provides:

> That there shall be an executive department to be denominated the Department of War, (a) and that there shall be a principal officer therein, to be called the Secretary for the Department of War, who shall perform and execute such duties as shall from time to time be enjoined on, or entrusted to him by the President of the United States . . . .

1 Stat. 49, 49–50.

This statute is silent as to the method of appointing the Secretary, and no subsequent legislation relative thereto has been enacted. The appointment of the Secretary is therefore left under the provisions of Article II, Section 2 of the Constitution, which, in prescribing the duties of the President, provides in part:

> [H]e shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper,

---

[*] Editor's Note: The version of this opinion that was transcribed in the Unpublished Opinions of the Assistant Solicitor General contained a footnote here cross-referencing another short memorandum regarding the President's authority to recess-appoint a Secretary of War. That memorandum, dated September 25, 1936, is included at the end of this opinion.

in the President alone, in the Courts of Law, or in the Heads of De-partments.

The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

Provision is made by sections 177 and 179 of the Revised Statutes for the temporary filling of the office of the head of a department. Those sections read as follows:

In case of the death, resignation, absence, or sickness of the head of any Department, the first or sole assistant thereof shall, unless oth-erwise directed by the President, as provided by section one hundred and seventy-nine, perform the duties of such head until a successor is appointed, or such absence or sickness shall cease [§ 177].

In any of the cases mentioned in the two preceding sections, except the death, resignation, absence, or sickness of the Attorney-General, the President may, in his discretion, authorize and direct the head of any other Department or any other officer in either Department, whose appointment is vested in the President, by and with the advice and consent of the Senate, to perform the duties of the vacant office until a successor is appointed, or the sickness or absence of the in-cumbent shall cease [§ 179].

Rev. Stat. §§ 177, 179 (2d ed. 1878), 18 Stat. pt. 1, at 28 (repl. vol.), *recodified at* 5 U.S.C. §§ 4, 6 (1934).

The filling of such office under sections 177 and 179 of the Revised Statutes, however, is temporary only, and section 180 (as amended) reads as follows:

A vacancy occasioned by death or resignation must not be tempo-rarily filled under the [three preceding sections] for a longer period than thirty days.

5 U.S.C. § 7 (1934).

Reading sections 177, 179, and 180 together, it is my opinion that the tempo-rary filling of a vacancy occasioned by the death or resignation of the head of a department may not be for a period of more than 30 days. This view has long been adhered to by your predecessors. (Section 178 pertains only to bureaus.)

In an opinion dated December 31, 1880, Attorney General Devens, replying to a letter of the Secretary of the Treasury informing him that the period of 10 days, for which Honorable Alexander Ramsey, Secretary of War, was designated to act as Secretary of the Navy under the provisions of sections 177 and 180 of the

Revised Statutes, expired the day before, and inquiring whether any person after such expiration could properly sign requisitions as Acting Secretary of the Navy for payments on account of the Navy, stated:

> In answer, I would say that, in my opinion, the vacancy in the office of the Secretary of the Navy created by the resignation of Hon. R.W. Thompson cannot be filled by designation of the President beyond the period of ten days. This power of the President is a statutory power, and we must look to the statute for its definition. An examination of the statutes which precede that statute of 1868 embodied in section 180 Revised Statutes satisfactorily shows that the period for which the vacancy can be filled by designation is limited to ten days. It would not, therefore, be in the power of the President, after such ten days, to designate another officer, or the same officer, to act for an additional period of ten days. The statutory power being exhausted, the President is remitted to his constitutional power of appointment. No appointment has been made, and there is, and can be, no person authorized by designation to sign requisitions upon the Treasury Department on account of Navy payments as Acting Secretary of the Navy.

*Appointments Ad Interim*, 16 Op. Att'y Gen. 596, 596–97 (1880).

In an opinion to the President dated March 31, 1883, Attorney General Brewster, construing sections 177, 178, 179, and 180 of the Revised Statutes with reference to the necessity of appointing a successor to Postmaster General Howe, deceased, said:

> [T]hose sections have received an interpretation by Mr. Attorney-General Devens, as appears on reference to volume 16 of Attorney-Generals' opinions, pages 596 and 597.

> It was there held by that officer that the President has power to temporarily fill by an appointment *ad interim*, as therein prescribed, a vacancy occasioned by the death or the resignation of the head of a Department or the chief of a bureau therein, for a period of ten days only. When the vacancy is thus temporarily filled once for that period, the power conferred by the statute is exhausted; it is not competent to the President to appoint either the same or another officer to thereafter perform the duties of the vacant office for an additional period of ten days.

> After carefully reading those sections and examining the history of their enactment, I concur in that opinion.

*Appointments Ad Interim*, 17 Op. Att'y Gen. 530, 530–31 (1883).

In an opinion to the President dated September 11, 1884, rendered in connection with the death of Secretary of the Treasury Folger, Attorney General Brewster, referring to his former opinion of March 31, 1883, submitted upon the death of Postmaster General Howe, affirmed that opinion and advised that the conclusions therein applied to the case under consideration. *Performing Duties of Vacant Office*, 18 Op. Att'y Gen. 58, 58–59 (1884).

In an opinion to the President dated January 31, 1891, rendered in connection with the death of Secretary of the Treasury Windom, Attorney General Miller said:

> It seems to me impossible to escape the effect of section 180 in limiting to a period of ten days the time during which the vacant office may be filled, either by the statutory succession provided in section 177, or the designation by the President provided in section 179, or by both.

*Vacancy in Head of Departments*, 20 Op. Att'y Gen. 8, 9 (1891).

At and prior to the time the opinion of Attorney General Miller above referred to was rendered, the limitation in section 180 was 10 days. After that opinion was rendered, the Congress, by the Act of February 6, 1891, ch. 113, 26 Stat. 733, 733, amended the section so as to extend the time to 30 days, but did not otherwise change the section.

In an opinion dated March 15, 1920, Acting Attorney General Ames, in answer to the letter of the Undersecretary of State advising that the 30 days of his incumbency as Acting Secretary of State expired on that date and inquiring what action would be appropriate for him and other officers of the department to take pending the confirmation by the Senate of the nomination of Mr. Colby as Secretary of State, stated:

> The President not having "otherwise directed," you held as "the first or sole assistant" under section 177. While that section provides that such an assistant shall "perform the duties of such head until a successor is appointed," this language must be construed in connection with section 180 as amended, which limits the time to 30 days. The vacancy to be filled under section 177 is manifestly to be filled only "temporarily," whether filled by the assistant or in such other manner as the President may direct. It can not be properly held that the 30 days' limitation applies only to a case in which the President otherwise directs and not to a case in which the assistant is acting under the statute, because the person acting in either contingency is acting temporarily, and because section 180 as amended specifically limits the period for temporary action to 30 days.

. . . .

    In the absence of a specific case it is difficult to suggest what course you and the other officers of the department should take pending the confirmation of Mr. Colby's nomination. It is probably safer to say that you should not take action in any case out of which legal rights might arise which would be subject to review by the courts.

*Vacancy in Office of Secretary of State*, 32 Op. Att'y Gen. 139, 141 (1920).

    An examination of the legislative history of the act of February 6, 1891, changing the limitation in section 180 from 10 days to 30 days, is instructive. The opinion of Attorney General Miller advising the President that it was necessary to appoint a successor to Secretary of the Treasury Windom within 10 days was dated January 31, 1891. *Vacancy in Head of Departments*, 20 Op. Att'y Gen. 8 (1891). On the same date President Harrison addressed to the Congress the following message:

    The sudden death of the honorable William Windom, Secretary of the Treasury, in New York, on the evening of the 29th instant, has directed my attention to the present state of the law as to the filling of a vacancy occasioned by the death of the head of a Department.

    I transmit herewith an opinion of the Attorney-General, from which it will be seen that under the statutes in force no officer in the Treasury Department, or other person designated by me, can exercise the duties of Secretary of the Treasury for a longer period than ten days. This limitation is, I am sure, unwise and necessarily involves, in such a case as that now presented, undue haste and even indelicacy. The President should not be required to take up the question of the selection of a successor before the last offices of affection and respect have been paid to the dead. If the proprieties of an occasion as sad as that which now overshadows us are observed possibly one-half of the brief time allowed is gone before, with due regard to the decencies of life, the President and those with whom he should advise can take up the consideration of the grave duty of selecting a head for one of the greatest Departments of the Government.

    Hasty action by the Senate is also necessarily involved, and geographical limitations are practically imposed by the necessity of selecting some one who can reach the Capital and take the necessary oath of office before the expiration of the ten days.

It may be a very proper restriction of the power of the President in this connection that he shall not designate, for any great length of time, a person to discharge these important duties who has not been confirmed by the Senate; but there would seem to be no reason why one of the Assistant Secretaries of the Department wherein the vacancy exists might not discharge the duties of Secretary until a successor is selected, confirmed, and qualified. The inconvenience of this limitation was made apparent at the time of the death of Secretary Folger. President Arthur, in that case, allowed one of the Assistant Secretaries, who had been designated to act in the absence of the Secretary, to continue in the discharge of such duties for ten days, then designated the same person to discharge the duties for a further term of ten days, and then made a temporary appointment as Secretary, in order to secure the consideration that he needed in filling this important place.

I recommend such a modification of the existing law as will permit the first or *sole* Assistant, or, in the case of the Treasury Department, where the Assistants are not graded, that one who may be designated by the President to discharge the duties of the head of the Department until a successor is appointed and qualified.

22 Cong. Rec. 2015 (message to Senate), 2060 (identical message to House).
Upon the receipt of this message in the House, Mr. McKinley introduced a bill (H.R. 13453) to amend section 180 of the Revised Statutes to read as follows:

A vacancy occasioned by death or resignation must not be temporarily filled under the three preceding sections for a longer period than thirty days.

22 Cong. Rec. 2064 (Feb. 2, 1891).
When motion to suspend the rules and pass the bill was seconded by Mr. McMillin, the bill was by unanimous consent considered and passed by the House without being referred to a committee. *Id.* at 2065. Mr. McKinley, in presenting the bill, stated:

[T]he President of the United States on last Saturday sent a message to the House of Representatives, as well as to the Senate, calling the attention of Congress to the fact that under existing law he could designate an officer to a Cabinet place for ten days, and ten only, and recommended that an extension of the time be given by public law. Doubtless gentlemen on both sides of the House have read the message in question and are aware of the occasion which led to its

transmission to Congress. The bill I have sent to the desk proposes to amend section 180 of the Revised Statutes, which reads as follows:

> Sec. 180. A vacancy occasioned by death or resignation must not be temporarily filled under the three preceding sections for a longer period than ten days.

Section 177 applies to the case which gives rise to this bill and is in the following words:

> Sec. 177. In case of the death, resignation, absence, or sickness of the head of any Department the first or sole Assistant thereof shall, unless otherwise directed by the President, as provided by section 179, perform the duties of such head until a successor is appointed or such absence or sickness shall cease.

Section 180 limits the power of the President to appoint a successor until a permanent appointment is made and confirmed by the Senate, limiting it to a period of ten days, in which time the appointment must be made.

Now, this bill follows the language of section 180, which is in the same words, except that we insert "thirty" instead of "ten" days, so that it gives the President thirty days' time within which he may designate a head of a Department to hold until his successor is qualified or appointed and confirmed.

*Id.* at 2064–65.

Mr. McMillin, who had seconded the motion for suspension of the rule and passage of the bill, stated:

> Mr. Speaker, lest my demand for a second on the motion of the gentleman from Ohio should be misunderstood, I wish to say that I do not see any reason why this bill may not be passed.

> If I remember correctly this is one of the statutes placed on the books in order to control President Johnson. I am not sure about it, but that is my memory.

> I do not, however, assent to the reasoning embodied in the President's message and am unable to see how he can reason as he does to reach the conclusion at which he has arrived. The principal part of the message is taken up with a statement that it is indecorous to the dead to proceed to carry out the statutes for the benefit of the living. I do not think that would be an act of indecorum; and hence I should

not vote for this proposition on that ground. But I can see that the period of ten days is a limit too short for the action which may be necessary in the appointment of the head of an Executive Department, and the Chief Executive might find himself at a great disadvantage in making that calm and judicious decision which should characterize his action.

*Id.* at 2065.

In the Senate the bill as passed by the House was referred to the Committee on Finance which reported an amendment striking out all after the enacting clause and thereafter considerably revising sections 177, 178, and 179 of the Revised Statutes and repealing section 180.

The following is a part of the discussion of the Senate Finance Committee amendment on the floor of the Senate:

> MR. GORMAN. I ask the Senator from Vermont if that [referring to the part of the amendment which repealed section 180, Revised Statutes] is not a very radical change and whether there ought not to be some limitation. We all know that gentlemen are selected for assistants of these Departments, for the great Treasury Department, and there might be some question as to whether favorable action was to be had in selecting a head of that Department. It does not seem to me that there ought to be a limit. Formerly I understand the time was six months, and afterwards during President Johnson's time it was limited to ten days. Now, we are going back and throwing it open and permitting these officers to be designated and to act for any length of time.

> . . . .

> MR. HALE. I should be very glad to have the Senator who reports this bill state to the Senate what reasons there were for going so largely into the question of the tenure of certain officers and their appointment. The emergency that arose was one that was clearly defined and was the subject of a special message from the President. The House of Representatives evidently took the matter up in that spirit, and passed a simple bill of a few lines, which I am bound to say suits me very much better than this long bill reported by the Senator from Vermont and sought to be put through now certainly without my being able to understand it. It occurs to me that the better thing to do would be to do just what the House of Representatives did, take that simple bill and pass it without any amendment.

> . . . .

MR. EVARTS. Mr. President, I have made a careful examination of the clauses in the statute book now relating to this subject, and have come to the conclusion, without reference to the bill introduced into the Senate, which I had not seen nor heard of till this morning, that all that is necessary either for permanent legislation or for this exigency is to enlarge the period within which authority for temporary appointment is needed. This I understand now has been provided for by a bill which passed the other House, simply by substituting the word "thirty" for "ten," as the statute now reads. Whether any new regulations should be made hereafter (and I can not foresee their necessity) this measure is all that is needed for this exigency, and so far as I can see all that is necessary for any supervening exigencies hereafter.

. . . .

MR. ALLISON. If the Senator will allow me, the provisions of the amendment are perfectly clear as proposed by the Senate committee. Instead of making the term thirty days, an Assistant Secretary is appointed who shall hold indefinitely until the President shall have selected a Secretary. That is the difference between the House bill and the Senate amendment, and the only difference.

MR. REAGAN. The effect of that might be that we should have the head of a Department holding indefinitely without the consent of the Senate, and I do not think that ought to be. I prefer the House bill.

. . . .

MR. HALE. It appears to me that the very fact that this debate has arisen here and that doubts have come up in the minds of Senators as to the operation of this amendment is in itself a conclusive argument against the amendment. The other branch of the national Legislature took the subject up at once and unanimously passed the simple bill that disposes of the question, the only real question that there is in it, as the President desired undoubtedly—I do not pretend to speak for him—but that seems to be his desire as indicated by his message.

I do not understand that there has been any serious inconvenience in the Departments heretofore, excepting upon this ten days' limitation, and the only thing that was sought to be done in the other branch was to relieve that, and I, for one, hope we may follow in the line they have taken.

. . . .

MR. DAWES. I should like to hear from the Committee on Finance the reasons they have to give for extending the time indefinitely; why it is better to put it in the power of the President to have an adviser without the consent of the Senate than to have one for thirty or forty days, a time sufficient for all the purposes that could be expected or desired except for the purpose of having an adviser without the consent of the Senate.

. . . .

MR. GORMAN. Mr. President, I have not looked into the subject particularly and it is comparatively new. My understanding, however, is that originally in the very first act passed upon this subject, during General Washington's Administration, six months was the limit.

MR. MORRILL. It was.

MR. GORMAN. I understand from the Senator from Vermont that I am correct in that statement. Congress was jealous about this matter and would not permit a designation to extend beyond the period of six months. So we ran along until we came to the exciting scenes during President Johnson's Administration, when the majority of Congress at that time thought there was some abuse by the President, even within that limit, in the appointment of his Cabinet officers and designating others to act in their place, and at that time a law was passed limiting the designations to ten days. From that period until now we have had a great many cases where the Administration, I have no doubt, has been embarrassed. I think we had one in the case of Secretary Manning, who was sick for quite a long time. Secretary Folger also during his service as Secretary of the Treasury was sick and afterwards died.

MR. EDMUNDS. If the Senator from Maryland will pardon me right on that point, in the instance of Secretary Manning, Mr. Fairchild was the Assistant Secretary, whose office was fixed by law and who had been confirmed by the Senate under the law and with the idea that, in the illness of his chief, the duty would devolve upon him by operation of law, and not necessarily by any designation of the President. It is the law which provides it. Therefore, in my opinion, as the law now stands, an Assistant Secretary may proceed until the President chooses to oust him by designating somebody else, or, which is the same thing, the business of any Department can go on

indefinitely by the deputy named by law, as distinguished from the selection by the President, until the vacancy is filled, and in that way Mr. Fairchild was enabled to go on. The only difficulty is in what I think is a wrong construction placed by a former Attorney General in a very brief opinion upon this right of the lawful deputy or assistant to act for more than ten days, who held in one instance under the law that the Assistant Secretary could only act for ten days, which I think is a great mistake; but as the committee has reported this amendment, instead of leaving the law to operate upon the Assistant Secretary upon whom the duty is devolved, namely, the First Assistant, it authorizes the President to step in and take his choice for an indefinite period, which I do not think is right.

*Id.* at 2078–79.

The amendment proposed by the Senate Finance Committee was rejected and the bill as sent over by the House was passed by the Senate. *Id.* at 2079. From this action by the Congress under the circumstances existing, and especially in view of the discussion of the bill and the proposed Senate Finance Committee amendment on the floor of the Senate, it seems clear that Attorney General Miller's construction of the statute correctly represents the intent of the Congress.

In view of the above, it is my opinion that the performance of the duties of the Secretary of War by an acting secretary may not extend beyond thirty days from the date of the death of the late Secretary of War, and that it will be necessary for a Secretary of War to be appointed in accordance with the provisions of Article II, Section 2 of the Constitution to perform those duties after that date.

It has been suggested that the President, as Commander in Chief of the Army, would be authorized under his constitutional powers to perform the duties of the Secretary of War. It will be noted, however, that in addition to the original duties placed upon the Secretary of War by the Act of August 7, 1789, creating the Department of War, to "perform and execute such duties as shall from time to time be enjoined on, or entrusted to him by the President of the United States," 1 Stat. at 50, the Congress has from time to time imposed upon the Secretary of War specific statutory duties, as will be seen by reference to sections 184–219, title 5, U.S. Code; to title 32, U.S. Code, relating to the National Guard; and to various other statutes. It cannot, of course, be contemplated that the President will actually serve as Secretary of War, and I have some doubt whether the duties specifically imposed by the Congress upon the Secretary of War as such officer can be performed by any person not serving as Secretary of War.

Moreover, it seems to me that the Constitution and the acts of Congress together evince the intent that the President shall appoint a successor to a deceased or resigned Secretary of War within thirty days from the time the office becomes vacant. In my opinion his failure to do this will subject him to unfavorable criticism, and will be immediately seized upon by those who have persistently

sought to create the impression that the President has no regard for the Constitution and the laws. This is particularly true in view of the legislative history of the statutes and the many published opinions of the Attorneys General construing them.

Should the President not desire to make the permanent appointment until after the convening of the next Congress, a resignation would not be necessary, since the appointment at that time by the President of a new Secretary of War, concurred in by the Senate, would *ipso facto* vacate the office as of the date the new appointment became effective. *See Blake v. United States*, 103 U.S. 227, 237 (1880). If the President may appoint a Secretary of War, it would seem that the President at his pleasure at any time may require his resignation and appoint someone else as Secretary of War to fill such vacancy.

It may be that the President could, if he so desired, designate the person appointed at this time as Acting Secretary of War, as an indication that the appointment was to be in the nature of a temporary one. Such an appointee would, however, in my opinion, be Secretary of War, and if elevated to that office from some other position in the Department I have serious doubt whether he could later resume his former office without reappointment and, if the nature of the office required it, confirmation by the Senate. Moreover, such an appointment might result in the President being charged with subterfuge, and might subject him to the same kind of unfavorable criticism as that to which he would probably be subject if no appointment were made at this time.

GOLDEN W. BELL
*Assistant Solicitor General*

September 23, 1936

SUMMARY OF MEMORANDUM OPINION FOR ATTORNEY GENERAL[*]

I. The Act of August 7, 1789, creating the Department of War provides that "there shall be a principal officer therein, to be called the Secretary for the Department of War."

The statute does not provide the method of appointing a secretary nor has any subsequent legislation done so. Such appointment therefore is governed by Article II, Section 2 of the Constitution under which the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint" the Secretary of War.

The same section provides that "[t]he President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session."

II. The only statutory authority for the President in the event of the death or resignation of the head of a department to designate a person to perform the duties of the vacant office until a successor is appointed is to be found in sections 177 and 179 of the Revised Statutes, the former providing that "the first or sole assistant thereof shall, unless otherwise directed by the President, perform the duties of such head until a successor is appointed"; and the latter (except in case of death or resignation of the Attorney General) that the President may authorize "the head of any other Department or any other officer in either Department, whose appointment is vested in the President, by and with the advice and consent of the Senate, to perform the duties of the vacant office until a successor is appointed."

III. Section 180 of the Revised Statutes, referring to sections 177 and 179 (also section 178 which pertains only to bureaus), provides that "a vacancy occasioned by death or resignation must not be filled under the three preceding sections for a longer period than 30 days." Since sections 177 and 179 contain the sole authorization to the President to designate someone to perform the duties of the Department whose head has died or resigned, the President is restricted to designating one of the persons therein described to act during the vacancy. He therefore has no authority to appoint to act during the vacancy a person who does not fall within the categories specified in sections 178 and 179.

IV. The Opinions of the Attorneys General from 1880 to the present time have construed the above-mentioned sections to mean that in case of a vacancy occasioned by the death or resignation of the head of a department the President may not designate a person to perform the duties of such head for a period of more than 30 days.

---

[*] Editor's Note: This summary, dated two days later, appears immediately after the full memorandum opinion in the Unpublished Opinions of the Assistant Solicitor General.

V. The legislative history of the above-mentioned provisions shows that originally the period during which the duties of a deceased or resigned head of a department might be performed by a person properly designated by the President was six months; that later the period was reduced to 10 days for the purpose of controlling appointments of President Johnson; that President Harrison protested the period of 10 days as too short; that thereupon an endeavor was made to repeal the restrictive legislation to permit the president to designate such officers to act for any length of time; that such endeavor was unsuccessful but the time was extended from 10 to 30 days—the existing provision.

VI. While the original duties placed upon the Secretary of War by the act of August 7, 1789, "to perform and execute such duties as shall from time to time be enjoined, on, or entrusted to him by the President of the United States," might be performed by the President as Commander in Chief of the Army during a vacancy in the office, subsequent legislation has from time to time imposed upon the Secretary of War specific statutory duties. Since it was not contemplated that the President should in fact serve also as Secretary of War, it is at least doubtful whether the duties specifically imposed by the Congress upon the Secretary as such can be performed by one who is not in fact serving as Secretary.

VII. Since the intent of the Constitution and the above-mentioned acts of Congress seems to be to require the President to appoint a successor to a deceased or resigned Secretary of War within 30 days from the time the office becomes vacant, failure by the President to do so within that time will probably result in criticism of the President.

VIII. Should the President desire not to appoint a permanent Secretary of War until after the convening of the next Congress, he could now appoint a Secretary of War and appoint another person as such after the convening of the Congress, which latter appointment, if concurred in by the Senate, ipso facto, would vacate the office as of the date the new appointment becomes effective. *Blake v. United States*, 103 U.S. 227, 237 (1880).

IX. If the President may appoint a Secretary of War, it would seem that the President at his pleasure at any time may require his resignation and appoint someone else as Secretary of War to fill such vacancy.

GOLDEN W. BELL<br>
*Assistant Solicitor General*

September 25, 1936

MEMORANDUM FOR THE ATTORNEY GENERAL[*]

Mr. Forster of the White House telephoned me this afternoon, advising that the President had concluded to appoint a Secretary of War to fill the existing vacancy. He inquired whether in preparing the commission it would be proper to insert in it a clause indicating that it was an "interim" appointment or restricting it to a certain time. I informed him that in my opinion it would not be proper for this to be done, since there is no authority for the President to limit the term of one appointed to this office, and in view of the fact that after appointment, he is removable, in any event, at the pleasure of the President.

There has been no call for a formal opinion, and I assume that final disposition of the matter has thus been made, unless it shall be later brought to your attention.

GOLDEN W. BELL
*Assistant Solicitor General*

---

[*] Editor's Note: This follow-up memorandum included a postscript: "Bell—Your view is correct, I am sure.—HSC." Presumably "HSC" was Attorney General Homer S. Cummings. On the same date, President Roosevelt recess-appointed Harry H. Woodring as Secretary of War to fill the vacancy left by the passing of George J. Dern on August 27, 1936.